IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| KELLY BLAND, individually and on behalf of all others similarly situated, | : : : | CIVIL ACTION FILE NO. |
| Plaintiff, | : : | **7:25-cv-50** |
| v. | : : : | **COMPLAINT – CLASS ACTION** |
| DIGITAL INSURANCE LLC d/b/a ONE DIGITAL | : : : | **JURY TRIAL DEMANDED** |
| Defendant. | : : : | |

Plaintiff KELLY BLAND (hereinafter referred to as "Plaintiff"), individually and on behalf of all others similarly situated, alleges on personal knowledge, investigation of her counsel, and on information and belief, as follows:

## NATURE OF ACTION

1. As the Supreme Court has explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991, known as the TCPA, generally prohibits robocalls to cell phones and home phones." *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2343 (2020).

2. "Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on

1

phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers,' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms,' *id.* § 2(9)." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649 (4th Cir. 2019).

3. Plaintiff, individually and as class representative for all others similarly situated, brings this action against Defendant for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") for making highly-illegal prerecorded telemarketing calls to cell phone numbers.

4. Plaintiff also alleges that Defendant used automated systems to make prerecorded telemarketing calls from and into Florida, and that by doing so, Defendant has violated the provisions of the Florida Telephone Solicitations Act, Fla. Sta § 501.059.

5. Because these calls were transmitted using technology capable of generating thousands of similar calls per day, Plaintiff sues on behalf of a proposed nationwide class of other persons who received similar calls.

6. A class action is the best means of obtaining redress for the Defendant's illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and FTSA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

**PARTIES**

7.     Plaintiff Kelly Bland is an individual who has a 940- area code number, which is associated with this District, in Spanish Fort.

8.     Defendant Digital Insurance LLC d/b/a OneDigital is Florida based health insurance and financial services company that uses illegal telemarketing calls to solicit business from and into this District, including by directing its conduct to 940- area code numbers and using 940- area code numbers to place the calls.

**JURISDICTION AND VENUE**

9.     This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227 *et seq*. This Court has supplemental jurisdiction over the state law claims since they relate to the same telemarketing campaign.

10.     This Court has specific personal jurisdiction over Defendant because it directed its conduct into this state by calling individuals with 940- area codes, as well as using those same 940- area code numbers on the calls.

11.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the acts and omissions giving rise to the case, namely, the illegal telemarketing conduct, occurred here because the calls were directed into this State and utilized this State's area codes to place the calls.

**TCPA BACKGROUND**

The Enactment of the TCPA and its Regulations

12.     In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . .

can be an intrusive invasion of privacy[.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

13. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call." 47 U.S.C. § 227(b)(1)(A).

14. The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). *See* 47 U.S.C. § 227(b)(3).

15. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

16. Congress singled out these services for special protection either because Congress realized their special importance in terms of consumer privacy and therefore protected them (as in the case of cellular phones), or because the numbers are assigned to services for which the called party is charged, thus shifting the cost of automated or prerecorded messages onto consumers. *See Barr v. Am. Ass'n of Pol. Consultants, Inc*, 140 S. Ct. 2335, 2363, (2020) (Gorsuch, J. & Thomas, J., concurring in part and dissenting in part).

17. This cause of action applies to users of any one of the four protected services (pager, cellular, specialized mobile radio [i.e. radiotelephony locator beacons or dispatch

systems], or another radio common carrier service [i.e. ship-to-shore or air-to-ground]), or any service, including residential, VoIP, and landline services, for which the called party is charged for the call. *See Perrong v. Victory Phones LLC*, No. CV 20-5317, 2021 WL 3007258, at *6 (E.D. Pa. July 15, 2021).

18. "Non-emergency prerecorded voice or autodialed calls to [the destinations enumerated in 47 U.S.C. § 227(b)(1)(A)] are permissible only with the prior express consent of the called party." This includes calls made using artificial or prerecorded voices pitching services. *See* FCC Enforcement Advisory: Tel. Consumer Prot. Act Robocall & Text Rules - Biennial Reminder for Pol. Campaigns About Robocall & Text Abuse, 31 FCC Rcd. 1940, 1941 n.6 (2016) [hereinafter FCC Advisory].

19. Non-consensual, non-emergency calls placed using an ATDS or an artificial or prerecorded voice violate 47 U.S.C. § 227(b)(1)(A), regardless of the purpose of the call. *Victory Phones*, 2021 WL 3007258, at *6 (rejecting claim that noncommercial survey calls were exempt and holding that "[T]he operative language of the TCPA is unambiguous. Section 227(b)(1)(A) prohibits placing artificial and prerecorded voice calls to a variety of telephone numbers."). To hold otherwise would read the words "any person" and "any call" out of the statute. *See id.*

<u>The Florida Telephone Solicitations Act</u>

20. The Florida Telephone Solicitation Act ("FTSA"), Fla. Stat. § 501.059 was amended by Senate Bill No. 1120 on July 1, 2021.

21. It is a violation of the FTSA to "make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection and dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a).

22. A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(i).

23. Pursuant to § 501.059(10)(a) of the FTSA, damages are available at a minimum of $500.00 for each violation.

## FACTUAL ALLEGATIONS

24. Plaintiff is a "person" as the term is defined by 47 U.S.C. § 153(39).

25. Defendant is a limited liability company that is based in Florida.

26. At no point has the Plaintiff consented to receive telemarketing calls from the Defendant regarding the sale of goods or services prior to receiving the automated calls at issue.

<u>Calls to Plaintiff</u>

27. Plaintiff's telephone number is (940) XXX-XXXX.

28. That telephone number is a residential cellular telephone line used by Plaintiff for calls and for personal, family, and household use.

29. The number is in Plaintiff's name and she pays the bill.

30. The number is a residential cellular telephone number.

31. Plaintiff never consented to receive calls from Defendant.

32. Plaintiff never did business with the Defendant.

33. Despite this, the Plaintiff received at least four calls from the Defendant, which were sent between February 25, 2025 and April 15, 2025 and solicited her to sign up for Medicare benefits.

34. The calls the Plaintiff received are reproduced below:

| Date | Caller ID |
|---|---|
| 02/25/2025 | 9402602560 |
| 04/09/2025 | 9402603914 |
| 04/15/2025 | 9402608402 |
| 04/15/2025 | 3127568874 |

35. The Plaintiff missed the first two calls from the Defendant.

36. The plaintiff answered the third call at 10:16 a.m. on April 15, 2025 and heard an artificial voice state the following:

> "Hi, good morning. This is Olivia Bennett. I'm calling to let you know that following the recent presidential change, your state has approved zero-dollar premium Medicare benefits..."

37. Plaintiff was then transferred by the robot to a live telemarketer who verified some information with her.

38. Plaintiff was subsequently transferred to a live licensed agent named "Marylin Monrreal" with "OneDigital" who provided Plaintiff with her direct line of (312) 761-9915 extension 5812655 as well as OneDigital's website address.

39. Calls one, two and four were from (940)-260-XXXX numbers.

40. The fourth call that the Plaintiff missed was from (312)-756-8874, the same number associated with Defendant Digital Insurance L.L.C. in a lawsuit in which it is also the named defendant. *See Woods v. Digital Insurance LLC*, No. 2:24-cv-14130 (S.D. FLA, filed May 1, 2024).

41. Defendant is a company that sells health insurance and provides insurance-based financial services.

42. The Defendant's calls were all made to sell the Plaintiff health insurance plans. They were therefore made for telemarketing purposes.

43. The Defendant called the Plaintiff at least four times attempting to solicit the Plaintiff for health insurance that Plaintiff had no interest in.

44. The first three calls were prerecorded calls because the call Plaintiff answered began with a voice that was obviously a robot, which had distinct pauses in recorded speech snippets, including because the Plaintiff was then transferred to an individual who, by comparison, was obviously a human.

45. Moreover, the unanswered calls did not leave messages or provide any other indication that a human being would make them.

46. Defendant therefore used automated marketing software to place the calls.

47. Plaintiff never consented to receive calls from Defendant.

48. Plaintiff never did business with the Defendant.

49. Based on the foregoing, it is evident that Defendant mass-dials calls indiscriminately and incessantly using prerecorded voices.

50. Plaintiff's privacy has been violated by the above-described telemarketing calls.

51. Plaintiff never provided her consent or requested these calls.

52. The aforementioned calls to the Plaintiff were unwanted.

53. The calls were non-consensual encounters.

54. Plaintiff and all members of the Classes, defined below, have been harmed by the acts of Defendant because their privacy has been violated and they were annoyed and harassed. In addition, the calls occupied their telephone lines, rendering them unavailable for legitimate communication, including while driving, working, and performing other critical tasks.

## CLASS ACTION ALLEGATIONS

55. Plaintiff brings this action on behalf of herself and the following classes (the "Classes") pursuant to Federal Rule of Civil Procedure 23.

56. Plaintiff proposes the following Class definitions, subject to amendment as appropriate:

> **Robocall Class:** Plaintiff and all persons within the United States: (1) to whose cellular telephone numbers (2) Defendant, or any third party acting on their behalf, placed a call using artificial or pre-record messages (3) within the four years prior to the filing of the Complaint.
>
> **Florida Telephone Solicitation Act Autodial Class:** All persons in the U.S., who, (1) received a telephonic sales call from Defendant made from or into Florida regarding insurance goods and/or services, (2) using the same equipment or type of equipment utilized to call Plaintiff (3) since July 1, 2021.

57. Plaintiff is a member of and will fairly and adequately represent and protect the interests of the classes as she has no interests that conflict with any of the class members.

58. Excluded from the Classes are counsel, the Defendant, and any entities in which the Defendant have a controlling interest, the Defendant's agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

59. Plaintiff and all members of the Classes have been harmed by the acts of the Defendant, including, but not limited to, the invasion of their privacy, annoyance, waste of time, the use of their telephone power and network bandwidth, and the intrusion on their telephone that occupied it from receiving legitimate communications.

60. This Class Action Complaint seeks money damages.

61. The Classes as defined above are identifiable through the Defendant's dialer records, other phone records, and phone number databases.

62. Plaintiff does not know the exact number of members in the Classes, but Plaintiff reasonably believes Class members for each Class number, at minimum, in the hundreds based on the fact that automated methods were used to send the calls.

63. The joinder of all Class members is impracticable due to the size of the Classes and relatively modest value of each individual claim.

64. Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

65. There are numerous questions of law and fact common to Plaintiff and to the proposed Classes, including but not limited to the following:

> (a) Whether the Defendant used automatic equipment as defined by Florida law to send telemarketing calls;
>
> (b) whether the Defendant sent calls using prerecorded voices in violation of the TCPA;
>
> (c) whether Defendant made calls to Plaintiff and members of the Classes without first obtaining prior express written consent to make the calls;
>
> (d) whether Defendant's conduct constitutes a violation of the TCPA or FTSA; and
>
> (e) whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

66. Further, Plaintiff will fairly and adequately represent and protect the interests of the Classes. Plaintiff has no interests which are antagonistic to any member of the Classes.

67. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions, and especially TCPA class actions. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the other members of the Classes and have the financial resources to do so.

68. Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy.

69. The likelihood that individual members of the Classes will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

## FIRST CAUSE OF ACTION

**Statutory Violations of the Telephone Consumer Protection Act
(47 U.S.C. § 227(b)) on behalf of the Robocall Class**

70. Plaintiff incorporates the allegations in paragraphs 1-74 as if fully set forth herein.

71. The Defendant violated the TCPA by sending or causing to be sent calls to the cellular telephones and other protected telephones of Plaintiff and members of the Robocall Class using a pre-recorded messages without their prior express written consent.

72. As a result of Defendant's violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and Robocall Class members are entitled to an award of $500 in statutory damages for each and every violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

73. The Plaintiff and Robocall Class members are entitled to an award of treble damages if the Defendant's actions are found to have been knowing or willful.

74. Plaintiff and Robocall Class members are also entitled to and do seek injunctive relief prohibiting Defendant from using a pre-recorded voice in the future, except for emergency purposes.

## SECOND CAUSE OF ACTION

**Violation of the Florida Telephone Solicitation Act,
Fla. Stat. § 501.059
On Behalf of Plaintiff and the Florida Telephone Solicitation Act Autodial Class**

75.     Plaintiff repeats and incorporates the allegations set forth in the paragraphs 1-74 as if fully set forth herein.

76.     Plaintiff brings this claim individually and on behalf of the Florida Telephone Solicitation Act Autodial Class Members against Defendant.

77.     It is a violation of the FTSA to "make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection and dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a).

78.     A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(i).

79.     Defendant failed to secure prior express written consent from Plaintiff and the Class Members.

80.     In violation of the FTSA, Defendant made and/or knowingly allowed telephonic sales calls to be made to Plaintiff and the Class members without Plaintiff's and the Class members' prior express written consent.

81. Defendant made and/or knowingly allowed the telephonic sales calls to Plaintiff and the Class members to be made utilizing an automated system for the selection or dialing of telephone numbers.

82. As a result of Defendant's conduct, and pursuant to § 501.059(10)(a) of the FTSA, Plaintiff and Class members were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the Class members are also entitled to an injunction under the FTSA against future calls. *Id.*

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

Injunctive relief under the TCPA and FTSA prohibiting Defendant from calling telephone numbers in violation of the TCPA or FTSA in the future;

That the Court enter a judgment awarding Plaintiff and all class members statutory damages of $500 for each violation of the TCPA or FTSA and $1,500 for each knowing or willful violation;

That the Court enter a judgment awarding Plaintiff and all class members statutory damages of $500 for each violation of the TCPA or FTSA and $1,500 for each knowing or willful violation as their actual damages for violations of the FTSA, together with fees and costs of suit; and

An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing such Classes the Court deems appropriate, finding that Plaintiff

is a proper representative of the Classes, and appointing the lawyers and law firms representing Plaintiff as counsel for the Classes;

Such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff requests a jury trial as to all claims of the complaint so triable.

RESPECTFULLY SUBMITTED AND DATED May 20, 2025

*/s/ Andrew Roman Perrong*
Andrew Roman Perrong, Esq.
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com

*Attorney for Plaintiff*